UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| J.B-K-1, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:18-cv-00025-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ADAM MEIER, in his official capacity as | ) | **&** |
| Secretary of the Cabinet for Health and | ) | **ORDER** |
| Family Services, *et al.*, | ) | |
| | ) | |
| Defendants. | | |

*** *** *** ***

Plaintiffs assert that the policies of Kentucky's Cabinet for Health and Family Services and the Department for Community Based Services regarding foster care maintenance payments violate federal law. They seek a declaratory judgment to that effect, as well as injunctive relief prohibiting the Defendants from enforcing the regulations which, Plaintiffs say, have unlawfully denied them benefits and prevented them from contesting that denial in a hearing. Finally, Plaintiffs assert constitutional violations pursuant to § 1983. Presently before the Court is Plaintiff's Motion to Certify Class. [R. 80.] For the following reasons, that motion is GRANTED.

# I

Broadly speaking, the named Plaintiffs in this matter consist of children and their caregivers who have become involved in dependency, abuse, and neglect (DNA) proceedings within the courts of Kentucky. Every child plaintiff in this case was removed from their home of origin by a Kentucky court in a confidential DNA proceeding, and later placed by into the temporary custody of a relative or fictive kin caregiver. [R. 35 ¶¶ 13–26.] Under certain

circumstances, pursuant to Title IV-E of the Social Security Act, children placed into foster care following a DNA proceeding are entitled to foster care maintenance payments (FCMP). A child is eligible to receive these payments if they are (1) removed from their home of origin pursuant to a judicial determination that continuation in their home of origin would be contrary to their welfare; (2) their placement and care are the responsibility of the State agency administering the state's Title IV-E plan; (3) they are placed in a foster family home; and (4) they were eligible for payments pursuant to the Aid to Families with Dependent Children (AFDC) program while in their home of origin. 42 U.S.C. § 672. The Plaintiffs—removed children and their relative or fictive kin caregivers—argue that the removed children meet the foregoing criteria, and are therefore entitled to FCMP payments.

Plaintiffs accuse Defendants of "adopt[ing] amended regulations, policies, and practices directing that each dependent, neglected, or abused child removed and ordered into the temporary custody of a relative or fictive kin is ineligible for FCMP benefits unless the Cabinet obtains temporary legal custody of the child during the removal period." [R. 80 at 11.] According to Plaintiffs, this custody requirement violates federal law, which requires only that a child's placement and care be the responsibility of the Cabinet. *Id.* Plaintiffs further allege that "[t]he Cabinet's regulations, policies, and practices specifically deny adequate and timely notice of FCMP benefits to potentially eligible dependent, neglected, or abused children and their relative or fictive kin caregivers, while also depriving them of access to any fair hearing or appeal process" simply because of the familial or fictive kin relationship between the child and their caregiver. *Id.* They seek declaratory judgment that these regulations, policies, and practices violate Kentucky's obligations pursuant to Title IV-E and the due process and equal protection clauses of the United States Constitution, as well as injunctive relief to prevent the

Cabinet and DCBS from continuing their discriminatory practices. To remedy the alleged violations, Plaintiffs seek certification of four classes, which they identify as the Children's Class, Caregivers' Class, Cabinet Custody Class, and Notice and Hearing Class.

Plaintiffs' proposed Children's Class includes all children in Kentucky who, between June 16, 2014 and April 1, 2019:

> a. were brought before a court in a dependency, neglect or abuse proceeding in which the Cabinet/DCBS was involved and were removed from their home of origin into out-of-home foster care pursuant to a judicial determination that (i) continuation in their home would be contrary to their welfare and (ii) reasonable efforts were made by the Cabinet/DCBS to prevent removal;
> b. resided in their home of origin at any point during the six months prior to removal;
> c. were ordered by the court directly into the temporary custody of and placement with relative or fictive kin caregiver(s) approved by the Cabinet/DCBS after bona fide consideration of the agencies' recommendation;
> d. remained in the temporary out-of-home placement with approved relative or fictive kin caregiver(s), and permanency for the children has not yet been achieved through AOC-DNA-9 Permanent Custody Order, adoption, or return to parent;
> e. were eligible in the month of removal in the children's home of origin for income assistance under the Aid to Families with Dependent Children program . . . ; and
> f. have not been provided FCMP benefits.

[R. 80 at 5.] The related Caregiver Class would consist of "all relative or fictive kin caregivers throughout the Commonwealth of Kentucky who accepted temporary placement and/or temporary custody of members of the Children's Class prior to April 1, 2019." *Id.* at 6.

The Cabinet Custody Class is slightly different. On January 27, 2017, the Sixth Circuit issued its Opinion in *D.O. v. Glisson*. 846 F.3d 374 (6th Cir. 2017). The effect of that Opinion is debated by the parties, however, Defendants' interpretation has consistently been that among DNA children in the care of a relative or fictive kin caregiver, only those children who were placed into the custody of the Cabinet and then placed by the Cabinet into the care of the relative or fictive kin caregiver may receive FCMP benefits. [R. 85 at 6; R. 86 at 8; R. 96 at 2–3.]

Plaintiffs allege that there are children and caregivers in Kentucky who have not received FCMP benefits which, even under Defendants' understanding of *D.O. v. Glisson*, they are due. Therefore, the Cabinet Custody Class would consist of "all children in the Commonwealth of Kentucky who, from and after the date of January 27, 2017: (a) are or were eligible to receive FCMP benefits under the Cabinet/DCBS's interpretation of *D.O. Glisson* that "Cabinet custody" is a required element for Title IV-E benefits; and (b) have not received FCMP benefits from . . . the date when the Cabinet placed them with their relative or fictive kin caregiver(s)." *Id.* The Cabinet Custody Class also includes the relative or fictive kin caregivers of children meeting those criteria. *Id.*

Finally, Plaintiffs assert that each of the foregoing would also be members of the Notice and Hearing Class. The Notice and Hearing Class, as outlined by Plaintiffs, would consist of all children removed from their homes of origin through DNA proceedings and placed in the temporary custody of a relative or fictive kin caregiver, whether by a court or by the Cabinet, between June 16, 2014 and April 1, 2019, who "were not timely provided proper notice or full disclosure of their potential eligibility for FCMP benefits by the Cabinet/DCBS upon the children's placement with their respective relative or fictive kin caregivers(s); or (b) FCMP benefit eligibility was denied to the children or their relative or fictive kin caregiver(s), and they were not provided timely and proper notice of their right to challenge or appeal such denial in a fair evidentiary hearing and due process review." *Id.* at 7.

Plaintiffs describe the foregoing classes as "fluid," in that "children move in and out of temporary foster care placements—sometimes being reunited with parents and sometimes being placed with other relatives or families (or fictive kin)." [R. 80 at 8, n. 8.] In part, Plaintiffs seek certification of the foregoing classes to avoid mootness. *Id.* The Eleventh Amendment limits

4

this Court's authority to award retrospective relief in this case. *See Green v. Mansour*, 474 U.S. 64, 67 (1985). Therefore, Plaintiffs seek only declaratory and prospective injunctive relief. Presumptively, any claims for FCMP are mooted when a child returns home or achieves permanency. Because the Cabinet/DCBS are statutorily charged with drafting a permanency plan expeditiously, K.R.S. § 620.230(1), there is potential that certain of the plaintiff children will achieve permanency before this Court reaches the merits of the case.[1]

Defendants disagree. They argue that class certification is unnecessary because any prospective injunctive relief will apply to all potential class members even without certification. *Id.* at 1. Because of this, they further argue that "so long as one of the Plaintiff children remains without an AOC-DNA-9 for (and there is no reason to think this will not remain the case) the Plaintiffs' primary claim as it concerns the alleged responsibility for "placement and care" will not face any danger of becoming moot." [R. 85 at 6.] Defendants also challenge certification on the grounds that it is inappropriate for this case. Because Plaintiffs challenge Defendants' policies with respect to foster care maintenance *payments*, Defendants argue that "much of the declaratory relief sought is essentially a request for monetary relief," and therefore certification is inappropriate under Rule 23(b)(2). [R. 85 at 11.] Finally, Defendants challenge the typicality and adequacy of the putative class. *Id.*

**II**

**A**

This Court has broad discretion in deciding whether to certify a proposed class. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). This is so because a "class

---

[1] Indeed, this is already the case for some plaintiffs. [*See* R. 80, n. 4, 5.]

action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" and is subject to strict requirements under Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To warrant certification, class members must not only satisfy Article III standing requirements, but must also "satisfy all four of the Rule 23(a) prerequisites— numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*)). "The party seeking class certification has the burden to prove the Rule 23 certification requirements." *Id.* (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079). The party opposing certification need not disprove the requirements. *See id.*

The requirements for standing outlined by Article III of the United States Constitution apply equally to class action lawsuits. *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005). The "irreducible" constitutional minimum of standing contains three elements: an injury in fact, a causal connection, and likely redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff in a suit must have suffered an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations omitted). Next, the plaintiff must demonstrate a "causal connection" between this injury and the alleged conduct of the defendant; "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal citations omitted). Finally, a favorable decision for the plaintiff must likely redress this injury, and relief must be more than merely speculative. *Id.* at 561.

Plaintiffs seeking the certification of a class must prove two additional components in order to show they have standing to proceed as a class. The proposed class must be identifiable and unambiguous, and the named representatives must be members of the proposed class. *Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-879, 2010 WL 1254849, *1 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011). In a properly defined class, only members who have standing to file suit in their own right would be included. *Chaz Concrete Co., LLC v. Codell*, No. 3:03-cv-52-KKC, 2006 WL 2453302, at *6 (E.D. Ky. Aug. 23, 2006). For that reason, the Court may deem a proposed class overly broad if such a class would incorporate members who neither have suffered harm nor are at risk to suffer such harm at the hands of the defendant. *Id.* (quoting *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001).

Finally, the Court is not required to inquire into the merits of the case in order to determine whether a person is a member of a class. *Bostick v. St. Jude Med., Inc.*, No. 03-2626 BV, 2004 WL 3313614, *16 (W.D. Tenn. 2004). Rather, "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quoting 5 James W. Moore, *et al.*, *Moore's Federal Practice* § 23.21[3] (Matthew Bender, 3d ed. 1997)). Plaintiffs, as the party invoking jurisdiction, bear the burden of proof on each requirement for standing. *Id.*; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007).

The Defendants do not argue the proposed class lacks standing. However, because at this stage any Article III issues in this case are dependent on whether a class is certified, the final determination of standing will be resolved as informed by Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997). This Court "therefore follow[s] the path" taken by the

Supreme Court, "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'" *Id.* at 613 (quoting 28 U.S.C. § 2072(b)); *see also* Fed. R. Civ. P. 82.

**1**

A prospective class must meet a total of seven independent requirements. Two of these criteria stem from Article III's standing mandates: "an identifiable class must exist, and the definition of the class must be unambiguous, and the named representative must be a member of the class." *Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-879, 2010 WL 1254849, *1 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011) (citations omitted). The remaining five requirements originate in Rule 23(a) and 23(b):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Finally, "In addition to the prerequisites of Rule 23(a), a party seeking class certification must show that the class action is maintainable under Rule 23(b)."

*Id.* (citations omitted). There must be a statement of the facts indicating that *each* requirement of the rule is fulfilled. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011).

Plaintiffs seek certification of four separate classes: the Children's Class, the Caregivers' Class, the Cabinet Custody Class, and the Notice and Hearing Class. [R. 80.] The Children's, Caregivers' and Cabinet Custody Classes could be considered "subclasses" of the Notice and Hearing Class, as the Notice and Hearing Class, as defined by Plaintiffs, would include all members of the other three classes. *Id.* Per subpart (c)(5), "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5).

Each "subclass" must independently satisfy the criteria of subparts (a) and (b) in order for certification to be proper.

Finally, "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  *Dukes* verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues.  *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1081 (6th Cir. 1996) (holding that individual proofs, which "vary from plaintiff to plaintiff," do not satisfy Rule 23(a)).  Rather, this Court must "probe behind the pleadings before coming to rest on the certification question."[2]  *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

**a**

Initially, Rule 23(a)(1) requires a proposed class to be "so numerous that joinder of all members is impracticable."  A proposed class may satisfy this requirement by demonstrating the impracticality of joinder.  *See, e.g.*, *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 660 (E.D. Mich. 1995) ("The numerosity requirement mandates that the joinder of all plaintiffs be impracticable—not impossible.").  There is no magic number or strict test for determining impracticality of joinder.  *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976).  "When class size reaches substantial proportions . . . the impracticability requirement is

---

[2] Generally, courts should not consider the merits of a suit at the class certification stage. *Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 177–78 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.").  *Wal-Mart Stores, Inc. v. Dukes*, however, indicates some flux within the law, noting that "some overlap with the merits of the plaintiff's underlying claim" is inevitable at the class certification stage.  564 U.S. at 351.

usually satisfied by the numbers alone." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.11 (3d ed. 2011).

Regardless, in determining practicability, a court should also consider the geographic dispersion of the proposed class, the sophistication of proposed class members, and the reluctance of individual class members to sue. 7A Wright & Miller, *Federal Practice and Procedure* § 1762 (3d. ed.); *see also Roman v. Korson*, 152 F.R.D. 101, 105–06 (W.D. Mich. 1993); *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666, 668 (E.D. Ky. 1974). "When a class numbers in the hundreds or thousands, the impracticability of joinder is obvious." *Mich. State Univ. Faculty Ass'n v. Mich. State Univ.*, 93 F.R.D. 54, 56 n. 1 (W.D. Mich. 1981); *see also* Newberg at § 3:12. For that reason, proposed classes with hundreds of members are routinely held to satisfy the numerosity requirement. *Mich. State Univ. Faculty Ass'n*, 93 F.R.D. at 56. In fact, courts have certified classes with as few as eighteen members. *See, e.g., Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) ("We further are of the opinion that eighteen is a sufficiently large number to constitute a class."); *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) ("[W]e are unwilling as a matter of law to hold that a class of 74 persons does not meet the requirement of numerosity."). Some courts hold that "a class of 40 or more members is sufficient to establish numerosity." *Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003). All of this leads to the conclusion that, in determining whether to certify a class, it is not necessary for a court to know the *precise* number of class members. Rather, the Court may rely upon reasonable inferences drawn from the known facts. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

Plaintiffs assert that the Children's Class and Caregivers' Class combined would include "approximately 16,000 Kentucky children plus a similar or greater number of these children's caregivers." [R. 80 at 7.] These figures are based on a statewide assessment conducted in 2018 at the behest of the Cabinet. [R. 80 at 15, n. 20; R. 79-11.] Plaintiffs further estimate that the Cabinet Custody Class includes "over 3,100 children plus a similar number of relative and fictive caregivers." [R. 80 at 16, n 21.] Finally, the Notice and Hearing Class, as contemplated by the Plaintiffs, "involves all the persons within the Children's Class, Caregivers' Class and the Cabinet Custody Class (16,000+3,100)[.]" *Id.* at 17. Thus, each class would contain thousands, if not tens of thousands, of members. Of course, this number is subject to change, as some children achieve permanency and others are removed from their home of origin and placed with relatives or fictive kin for the first time. However, the Court need not know the precise number of class members. The facts available indicate that there are tens of thousands of potential class members. Also, Defendants do not dispute that the numerosity requirement of Rule 23(a) is met. The Court finds Plaintiffs have satisfied their burden to prove numerosity.

**b**

Next, in order for a class to be certified under Rule 23(a)(2), there must be "questions of law or fact common to the class." This is because, where there are common questions of law or fact, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Traditionally, it has been the rule that to satisfy the commonality requirement of Rule 23(a)(2), only one single issue that is common to all members

of the class is required, not multiple issues.[3]  *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996); *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) ("Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class—though that question must be a 'common issue the resolution of which will advance the litigation.'") (quoting *Sprague v. Gen. Motors*, 133 F.3d 388, 397 (6th Cir. 1998)).  The language of commonality, however, "is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions."'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–132 (April 2009)).  The essential commonality inquiry, therefore, is not whether common questions exist, "but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (quoting Nagareda, *supra*, at 132).  Dissimilarities between members of the proposed class can potentially impede the satisfaction of this requirement.  *Id.*  Indeed, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the *same* injury.'"  *Id.* at 349–50 (emphasis added) (quoting *Falcon*, 457 U.S. at 157).

Defendants do not argue Plaintiffs have failed to meet the commonality requirement of Rule 23(a)(2), and the Court independently finds that criteria is met.  Here, all members of the Children's Class and Caregivers' Class alike challenge the policies of the Cabinet and DCBS that have denied them FCMP benefits as well as notice and a hearing to contest the denial of those benefits.  [*See* R. 1.]  A question of law common to these classes is whether removed children

---

[3] Many courts have held that when the legality of the defendant's standardized conduct toward all members of the proposed class is at issue, the commonality factor is ordinarily met.  *See Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 481 (S.D. Ohio 2004) ("Where, as here, Plaintiffs allege a common course of conduct by Defendants that caused harm, class certification is proper.").

placed directly by a court into the custody of a relative or fictive kin are nevertheless under the "placement and care responsibility" of the cabinet. The common question facing the Cabinet Class is "whether the policy and practice of the Cabinet/DCBS not to pay FCMP benefits . . . from the date of placement violates state or federal law and/or constitutional law," as well as whether Cabinet Class members are entitled to an opportunity for a hearing on that issue. Lastly, a common question of law among members of the Notice and Hearing Class, which contains members from the Children's, Caregivers' and Cabinet Custody Classes, is whether Defendants provided adequate notice of class members' potential eligibility for FCMP benefits, and whether they are entitled to a fair hearing and due process review of a denial of benefits.

Declaratory judgment in this case will clarify the relationship between the federal requirements of Title IV-E and the state statutes enacted by Kentucky to effectuate that program. The questions posed by the named plaintiffs regarding their potential eligibility for payments and due process rights regarding those payments are questions of law which will equally affect each of the named plaintiffs, and "common answers" to these questions will "drive the resolution of litigation." *Dukes*, 564 U.S. at 350. The commonality requirement of Rule 23(a)(2) is met.

c

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." This requirement seeks to ensure that the interests of the named representatives align with the interests of the members of the proposed class. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). A named plaintiff's claim is typical if the claim arises from the same practice, event, or course of conduct giving rise to the other class members' claims, and if all claims are based on the same legal theory. *Id.* Although the class representatives' claims must be typical, "Rule 23 does not require absolute

homogeneity." *Tucker v. Union Underwear Co., Inc.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992). Rather, "Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The inquiry focuses special attention on "differences between class representative claims and class claims that would defeat the representative nature of the class action." *Van Vels v. Premier Athletic Center of Plainfield, Inc.*, 182 F.R.D. 500, 510 (W.D. Mich. 1998) (citations omitted).

Defendants assert Plaintiffs have failed to satisfy the Rule 23(a) requirement of typicality because they have failed to demonstrate that each of the plaintiff children were AFDC eligible in their home of origin.  [R. 85 at 14.]  AFDC eligibility is a prerequisite to eligibility for foster care maintenance payments under 42 U.S.C. § 672(a).  According to the Defendants, "exhibit[s] containing generalized statements of poverty" are insufficient to affirmatively demonstrate typicality.  [R. 85 at 14.]

Defendants' point is well-taken.  However it is not clear to the Court that the alleged failure to prove AFDC eligibility undermines typicality.[4]  Plaintiffs allege that Defendants have systematically denied benefits and a hearing to contest the denial of benefits based on a policy that renders DNA children placed by the court into the homes of relatives or fictive kin ineligible—period— by virtue of that placement.  Put differently, whether or not the named plaintiffs could prove AFDC eligibility, they argue they were denied FCMP benefits simply because of the relationship between the removed child and that child's relative or fictive kin

---

[4] Though it may have some bearing on adequacy, discussed *infra* II.A.1.d.

caregiver.  Thus, it is the policy, not a hypothetical inability to prove AFDC eligibility, that injures the plaintiffs.  This is true for every member of the Children's and Caregivers' Class.

The typicality requirement is also satisfied with respect to the Cabinet Class and the Notice and Hearing Class.  The Cabinet Class alleges they were denied benefits for which they were eligible under the Cabinet's interpretation of *D.O. v. Glisson*.  834 F.3d 374 (6th Cir. 2017).  Finally, the Notice and Hearing class contests Defendants' denial of proper and timely notice of their potential eligibility for maintenance payments and of any due process review of a denial of maintenance payments.  Because each named Plaintiff's claim arises from the same conduct of Defendants as would potential class members', the Court finds the typicality requirement is met.

### d

Finally, Rule 23(a)(4) allows a class to be certified only if "the representative parties will fairly and adequately protect the interests of the class."  This is an essential prerequisite for due process, as a final judgment in a class action binds all class members.  *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)).  This circuit applies a two-part test for determining the adequacy of representation.  First, the named representatives "must have common interests with the unnamed members of the class," and second, it must be apparent that the named representatives "will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).  This "adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."  *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083.

Defendants raise the same argument against adequacy as against typicality: Defendants believe that the named plaintiffs are inadequate representatives because they have not

sufficiently demonstrated AFDC eligibility. Rule 23 requires that representative parties be members of the class. Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties . . . ."). If the Court accepted Defendants' arguments that the named plaintiffs have failed to establish AFDC eligibility, then it would follow that the named plaintiffs are not members of the class, and therefore cannot be adequate representatives. However, the Court does not agree with Defendants that Plaintiffs have failed to establish AFDC eligibility.

Plaintiffs have provided seemingly all available evidence in support of their AFDC eligibility. Declarations made by the Plaintiffs, and unrefuted by the Defendants, demonstrate that each child plaintiff was dependent at the time of removal as a result of insufficient assets or parental support. [R. 59–71.] And, as the Plaintiffs point out, any deficiency in proof of AFDC eligibility is the fault of the Defendants, as "the Cabinet/DCBS is responsible for collecting necessary information . . . and determining whether the child's home situation meets AFDC financial need and deprivation requirements." [R. 95 at 10.] Conversely, the Cabinet collects this information when children are placed into its care. Indeed, three of the plaintiff children have non-Plaintiff siblings who receive FCMP benefits "because the Cabinet obtained legal custody over the siblings for a brief period of time (and placed them in the same Plaintiff Caregiver Household as their Plaintiff Children siblings.). [R. 95 at 9; R. 71.] According to Plaintiffs, missing information regarding AFDC eligibility at the time of removal is yet another result of Defendants' "discriminatory policy of denying Title IV-E eligibility to removed children placed directly into the temporary custody of a relative or fictive kin[.]"

If the Defendants' policies toward children placed with relatives and fictive kin are found to be unconstitutional and in violation of Title IV-E, it would be unfair to allow Defendants to

argue that because of those same policies, Plaintiffs could never prove AFDC eligibility. The Court thinks Plaintiffs have done enough and finds the adequacy requirement is met.

Finally, Plaintiffs are represented by three experienced litigants with experience managing class actions.[5] One attorney represented the plaintiffs in the oft-cited *D.O. v. Glisson*, which both parties read as paramount to the outcome of this case. Defendants do not contest the adequacy of Plaintiffs' counsel, and the Court finds Plaintiffs have met the requirements under Rule 23(a)(4).

2

Plaintiffs seek certification only pursuant to Rule 23(b)(2). [R. 134 at 6.] Rule 23(b)(2) applies exclusively in cases when class members seek the same declaratory or injunctive relief and do not assert individualized claims for damages. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011). Generally, claims for monetary relief are inappropriate under Rule 23(b)(2). *Id.*; *see also id.* at 363 ("Rule 23(b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages'" (quoting Fed. R. Civ. P. 23, Advisory Committee's Note to 1966 Amendment, 39 F.R.D. 69, 102 (1966))). Rather, "'[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture." *Id.* at 361 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Rule 23(b)(2) "reflects a series of decisions involving challenges to racial segregation—conduct that was remedied by a single classwide order." *Id.* "In *none* of the cases cited by the Advisory Committee as examples of (b)(2)'s

---

[5] At the time of filing the Motion for Class Certification, Plaintiffs were represented by Richard Frank Dawahare as well as Douglas L. McSwain and Justin Ross of Wyatt, Tarrant and Combs LLP. Mr. Ross's representation ceased in October, 2019 and he was seemingly replaced with Thomas Edwin Joseph Travis, also of Wyatt, Tarrant and Combs. Though the motion argues the competency of Mr. Russ and not Mr. Travis, the Court not aware of any reason why Mr. Travis should be prevented from serving as class counsel.

antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction." *Id.* (emphasis added) (citing Advisory Committee's Note, 39 F.R.D. at 102). This is because permission to combine individualized and classwide relief within a single Rule 23(b)(2) class is inconsistent with the structure of Rule 23(b)." *Id.*

The key to class certification under Rule 23(b)(2) is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them." *Wal-Mart*, 564 U.S. at 360 (citing Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (April 2009)). Plaintiffs' request here, the injunctive relief regarding Cabinet and DCBS policies relating to children placed by a court with relative or fictive kin caregivers, is indivisible as to the class members.

Defendants argue that certification under 23(b)(2) is inappropriate, "because much of the declaratory relief sought is essentially a request for monetary relief[.]" [R. 85 at 11.] According to Defendants, because Plaintiffs claim they are "entitled" to FCMP benefits, "it is readily apparent that the Plaintiffs are seeking individualized monetary relief for both themselves and for the putative class members." However, in the Sixth Circuit, "certifying declaratory relief under Rule 23(b)(2) is permissible even when the declaratory relief serves as a predicate for later monetary relief, which would be certified under Rule 23(b)(3)." *Gooch v. Life Inv'rs Co. of Am.*, 672 F.3d 402, 427–49 (6th Cir. 2012). Crucially, Plaintiffs seek only prospective relief, as the Eleventh Amendment limits this Courts authority to award retrospective relief in this case. *See Green v. Mansour*, 474 U.S. 64, 67 (1985). And although the Cabinet Custody Class seeks a declaratory judgment to establish that "Defendants' standard policies and practices of denying payment of FCMP benefits back to the date of placement of eligible children removed from their

homes," any monetary award under those circumstances would be incidental. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) ("[I]ncidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.). In Kentucky, foster care maintenance payments are governed by Cabinet policy and paid out at a per diem rate. [R. 80-1.]. It does not require "complex individualized determinations" as Defendants claim. [R. 85 at 4.] Hence, certification is appropriate under Rule 23(b)(2).

**3**

As a final matter, the Court turns its attention to the issue of mootness. Plaintiffs sought certification in part due to the concerns that the claims of individual named plaintiffs would become moot as children achieved permanent placement. Some named plaintiff children have already done so. [*See* R. 80, n. 4–5.] Of course, to be a class representative, a named plaintiff must also be a member of the class. Fed. R. Civ. P. 23(a). Admittedly, the Court is unaware whether there remain among the named plaintiff children any who have not achieved permanency. Because only prospective relief is available, permanent placement would moot the individual claims of any permanently-placed child, as well as his former relative or fictive kin caregivers. However, "when the mootness of the representative's claim occurs while the action is still pending in the trial court, but before the judge has ruled on whether it properly may be certified as a class action under Rule 23 . . . then class certification might be allowed to relate back to the filing of the complaint as a matter of policy." 7AA Fed. Prac. & Proc. Civ. § 1785.1 (3d ed.). Article III requires "a named plaintiff who has . . . a case or controversy at the time the complaint is filed, . . . and at the time the class is certified[.]" However, the controversy may exist "between a named defendant and a member of the class represented by the named plaintiff,

even though the claim of the named plaintiff has become moot." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975).

The Court is unaware whether the individual claims of the named plaintiffs have become moot. Either way, the Court finds that the named plaintiffs may serve as class representatives in the instant action. Accordingly named Plaintiff Children J.A., K.A.-1, B.A., C.H.-1, C.H.-2, i.T., D.T., J.S.-1, J.S.-2, C.R., K.E., T.B., N.C., and T.C. shall serve as representatives of the Children's Class. Named Plaintiff caregivers K.A.-2, T.A., E.A., C.A., R.W., L.A., S.T., C.H.-3, K.G., A.H., and A.C. shall serve as representatives of the Caregivers' Class. Named Plaintiff children R.C., D.C., and C.C.-1, and named Plaintiff caregivers C.C.-2 and K.C. shall represent the Cabinet Custody Class. Finally, named Plaintiff children J.B-K.-1, J.B-K.-2, J.A., K.A.-1, B.A., C.B., N.B., C.H.-1, C.H.-2, I.T., D.T., J.S.-1, J.S.-2, C.R., A.R.-1, A.R.-2, K.E., T.B., N.C., and T.C., and named Plaintiff caregivers E.B., K.A.-2, T.A., E.A., C.A., H.D., R.W., L.A., S.T., C.H.-3, J.D., K.G., A.H., and A.C. shall serve as representatives of the Notice and Hearing Class.

### III

The requirements of Rule 23 are met, and the Court finds class certification is appropriate here. The common questions of law raised by Plaintiffs are relevant not just to the named plaintiffs, but many Kentuckians. Of course, those questions are yet unanswered: several motions addressing the merits of this case remain before the Court. [R. 79; R. 93; R. 96; R. 97.] Having resolved the certification issue, the Court will address these in time.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion to Certify Class [**R. 80**] is **GRANTED**;

2. The Court **CERTIFIES** a Children's Class defined as "all children in the Commonwealth of Kentucky who, between June 16, 2014 and April 1, 2019, were brought before a court in a dependency, neglect or abuse proceeding and were removed from their home of origin into the temporary custody of a relative or fictive kin caregiver, and for whom permanency has not been established";

3. Plaintiffs J.A., K.A.-1, B.A., C.H.-1, C.H.-2, I.T., D.T., J.S.-1, J.S.-2, C.R., K.E., T.B., N.C., and T.C. **SHALL SERVE** as Children's Class representatives;

4. The Court **CERTIFIES** a Caregivers' Class defined as: "all relative or fictive kin caregivers throughout the Commonwealth of Kentucky who accepted temporary placement of a member of the Children's Class prior to April 1, 2019";

5. Plaintiffs K.A.-2, T.A., E.A., C.A., R.W., L.A., S.T., C.H.-3, K.G., A.H., and A.C. **SHALL SERVE** as representatives of the Caregivers' Class;

6. The Court **CERTIFIES** a Cabinet Custody Class defined as: "all children in the Commonwealth of Kentucky who, after January 17, 2017, are or were eligible to receive FCMP benefits under the Cabinet and DCBS's interpretation of *D.O. v. Glisson* that "cabinet custody" is a required element for the Title IV-E benefits and have not received benefits from the date when the Cabinet placed them with relative or fictive kin caregivers, and the relative and fictive kin caregivers of those children";

7. Plaintiff children R.C., D.C., and C.C.-1 and Plaintiff caregivers C.C.-2 and K.C. **SHALL SERVE** as representatives of the Cabinet Custody Class;

8. The Court **CERTIFIES** a Notice and Hearing Class defined as: "all children in the Commonwealth of Kentucky removed from their homes in a DNA proceeding and temporarily placed with  relative or fictive kin caregivers, as well as all such relative or fictive

kin caregivers, who, between Jun 16, 2014 and April 1, 2019, were not timely provided notice of their potential eligibility for FCMP benefits by the Cabinet or DCBS upon the children's placement with the relative or fictive kin caregiver, or for whom FCMP benefit eligibility was denied without timely and proper notice of their right to challenge and appeal such a denial in a fair evidentiary hearing with due process review";

9.     Plaintiff children J.B-K.-1, J.B-K.-2, J.A., K.A.-1, B.A., C.B., N.B., C.H.-1, C.H.-2, I.T., D.T., J.S.-1, J.S.-2, C.R., A.R.-1, A.R.-2, K.E., T.B., N.C.,  and T.C., and named Plaintiff caregivers E.B., K.A.-2, T.A., E.A., C.A., H.D., R.W., L.A., S.T., C.H.-3, J.D., K.G., A.H., and A.C. **SHALL SERVE** as representatives of the Notice and Hearing Class; and

10.    Douglas L. McSwain and Thomas Edwin Joseph Travis, of the law firm Wyatt, Tarrant & Combs LLP, and Richard Frank Dawahare are **APPOINTED** as class counsel.

This the 13th day of March, 2020.

Gregory F. Van Tatenhove
United States District Judge