UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| J.B-K.-1 and J.B-K.-2, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil No. 3:18-cv-00025-GFVT-EBA |
| v. | ) | |
| | ) | |
| SECRETARY OF THE KENTUCKY | ) | **MEMORANDUM OPINION** |
| CABINET FOR HEALTH AND | ) | **&** |
| FAMILY SERVICES, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

This case centers around a dispute involving Kentucky's implementation of Title IV-E of the Social Security Act with respect to foster care maintenance payments. Defendants argue that in order to be eligible for these payments, a removed child must be placed in the custody of the Cabinet for Health and Family Services. But what happens when a judge places a child directly with a relative or "fictive kin"? Is the custody requirement met in this circumstance? Plaintiffs argue that that the answer is yes, and that in implementing this "custody requirement," the Defendants have contravened Title IV-E and the Equal Protection clause. Plaintiffs further allege Defendants have violated their Due Process rights by refusing to afford them a hearing on the denial of benefits.

Recently, this Court granted Plaintiffs' Motion for Class Certification. [R. 116.] Still pending before the Court is Defendants' Motion to Dismiss, Defendants' *Daubert* Motion to Exclude Testimony, Defendants' Motion for Summary Judgment, and Plaintiffs' Motion for Preliminary Injunction, Declaratory Judgment, and Permanent Injunction. [R. 79; R. 93; R. 96;

R. 97.]  For the following reasons, Defendants' Motion to Dismiss is DENIED; Defendants' *Daubert* Motion to Exclude Testimony is DENIED; Defendants' Motion for Summary Judgment is GRANTED; and Plaintiffs' Motion for Preliminary Injunction, Declaratory Judgment, and Permanent Injunction is DENIED.

<strong>I</strong>

In 1980, Congress passed the Child Welfare Act, also known as Title IV-E of the Social Security Act.  It requires participating states to provide foster care maintenance payments to certain eligible children within the state's foster care system.  42 U.S.C. §§ 621 *et seq.*  This entitlement program reimburses states with approved programs a portion of the costs associated with the care of certain children.  To receive this funding, a state must submit a proposed plan to implement the requirements of the Title IV-E, and that plan must be approved by the Department for Health and Human Services.  [*See* R. 79-13.]  Kentucky participates in this program and has enacted statutes and regulations to implement it.  *See* K.R.S. § 620.010 *et seq.*  As a recipient of federal grants under Title IV-E, Kentucky is required by federal law to pay foster care maintenance payments to or on behalf of eligible needy children until they are placed in a permanent living situation.

 This dispute arises out of the parties' differing interpretations of the law regarding who is eligible to receive foster care maintenance payments.  The Defendants in this case, the Kentucky Cabinet for Health and Family Services (the Cabinet) and the Department for Community Based Services (DCBS) are the state agencies responsible for administering the federally approved Foster Care Maintenance Program (FCMP).  [R. 35 at 27–29.]  The named Plaintiffs in this matter are children and their caregivers who have become involved in dependency, neglect, and abuse (DNA) proceedings within the courts of Kentucky.  Most of the

child plaintiffs in this case were removed from their homes of origin by through a dependency, neglect and abuse proceeding and placed directly by the court with relative or fictive kin caregivers.  [R. 35 ¶¶ 14–25.]  The relative and fictive kin caregivers of these children are also named plaintiffs in this action.  *Id.*  A smaller subset of plaintiff children were placed into the custody of the Cabinet as the result of a DNA proceeding, and the Cabinet then placed these children in the care of a relative or fictive kin caregiver.  [R. 35 ¶ 26.]  The relative and fictive kin caregivers with whom these children were placed by the Cabinet are also named plaintiffs in this action.  *Id.*

Plaintiffs' Complaint includes four counts.  [R. 35.]  Count I alleges that Defendants' refusal to make foster care maintenance payments to the plaintiffs is in violation of its obligations under of 42 U.S.C. § 672(a)(1).  *Id.* at ¶¶ 72–81.  Count II alleges violations of 42 U.S.C. § 671(a)(12) and 45 C.F.R. 1355.30(p)(2).  *Id.* at ¶¶ 82–87.  Plaintiffs argue in this count that they are entitled to a fair hearing with respect to any denial of FCMP benefits.  *Id.*  Count III accuses Defendants of violating the 14th Amendment to the United States Constitution by refusing Plaintiffs "their statutory entitlement to a 'fair hearing' . . . without due process of law." *Id.* at ¶ 90.  Last, Count IV alleges Defendants' policy of denying FCMP benefits to children and their caregivers when those caregivers are relative or fictive kin is "an arbitrary, unlawful, and unreasonable distinction or classification between similarly situated individuals in violation of the Equal Protection Clause of the 14th Amendment[.]"  *Id.* at ¶ 92.

Each of the foregoing claims hinges on whether a child's "placement and care are the responsibility of the State agency administering the State plan" for foster care maintenance payments when the DNA court places the child directly into the custody of a relative or fictive kin caregiver, as opposed to placing the child in the custody of the Cabinet.  42 U.S.C. §

672(B)(i).  If not, then Defendants have not violated §§ 672, 671 or 45 C.F.R. 1355.30, nor can

they be said to have violated the Due Process or Equal Protection clauses.  Thus, deciding the

question of placement and care responsibility is determinative.  In its Order dated March 13,

2020, this Court certified four classes of Plaintiffs: the Children's Class, the Caregivers' Class,

and the Cabinet Custody Class.  [R. 116.]  Having certified the foregoing classes, the Court will

answer this question for all class members.

## II

## A

Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) come

in two varieties: a facial attack or a factual attack.  *Gentek Bldg. Prods., Inc., v. Sherwin-*

*Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack "questions merely the

sufficiency of the pleading."  *Id.*  When a motion raises a facial attack, the Court must accept all

the "allegations in the complaint as true," and "if those allegations establish federal claims,

jurisdiction exists."  *Id.*  On the other hand, a factual attack is "not a challenge to the sufficiency

of the pleading's allegations, but a challenge to the factual existence of subject matter

jurisdiction."  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  When the 12(b)(1)

motion factually attacks subject matter jurisdiction, "no presumptive truthfulness applies to the

allegations," and the court "must weigh the conflicting evidence to arrive at the factual predicate

that subject-matter does or does not exist."  *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330.  "In

response to a Rule 12(b)(1) motion, the plaintiff bears the burden of proving jurisdiction."

*E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 777 (6th Cir.

2010).

Defendants argue that their motion should be granted pursuant to Rule 12(b)(6).  [R. 97 at

1.]  However, they argue for dismissal on the grounds that certain Plaintiffs' claims have become moot, and therefore the court lacks subject matter jurisdiction to proceed with those claims. Thus, Defendants' arguments are properly analyzed below as a factual attack on subject matter jurisdiction pursuant to Rule 12(b)(1).

### 1

Defendants' main argument for dismissal is that a handful of the named plaintiffs' claims have become moot.  [R.  97 at 5.]  Defendant argues that once a child plaintiff achieves permanency, whether through adoption or a return to their home of origin, then those plaintiffs' and their guardians' claims are mooted.  *Id.*  Consequently they lack standing to proceed.  *Id.* However, on March 13, 2020 this Court granted Plaintiffs' Motion for Class Certification and certified four classes of plaintiffs.  [R. 116.]  That Order found that the named plaintiffs' claims would "relate back" to the date of filing and therefore the plaintiffs were qualified to serve as class representatives.  *Id.*  Article III requires there be a live case or controversy before the court, but the controversy may exist "between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot," as here.  *Sosna v. Iowa*, 419 U.S. 393, 402 (1975).  Defendants' Motion to Dismiss for lack of standing is DENIED.

### 2

Defendants' also argue that the Court should dismiss Plaintiffs' claims seeking retrospective relief.  [R. 97 at 4.]  Parties agree that the Eleventh Amendment prevents the Court from awarding retrospective monetary relief in this case.  [R. 97 at 4; R. 103 at 5.]  However, Plaintiffs dispute that the relief they seek is, in fact, retrospective monetary relief.  [R. 103 at 5.] Plaintiffs argue that any award of monetary relief as a result of this class action would be purely

incidental: "while retrospective ("corrective") relief is plainly owed to all Plaintiffs, none of them directly seek such relief in this federal lawsuit, but rather pray that this Court recognize and reinstate their right to prompt notice of potential eligibility for FCMP benefits and an opportunity to be heard in a due process hearing should the Cabinet continue to deny them such benefits." [R. 103 at 6.]  Even the Cabinet Custody Class, which asks the Court to issue a  declaratory judgment establishing that "Defendants' standard policies and practices of denying payment of FCMP benefits back to the date of placement of eligible children removed from their homes," violates federal law, does not seek monetary relief from this Court, but rather notice and an opportunity for a hearing on the issue of back-payment of benefits.  [R. 35 at 40; R. 80 at 19.] The Court has already found that any monetary award under those circumstances would be incidental.  [R. 116; *see Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) ("[I]ncidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.).]  Therefore, the Court DENIES Defendants' motion to dismiss.

## B

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## 1

As part of their proof, Plaintiffs filed deposition testimony from the Honorable Douglas Bruce Petrie, a family law judge in the Kentucky's 50th Judicial Circuit, which Defendants have moved to exclude. [R. 98 at 3; R. 93.] Both parties cite to Judge Petrie's testimony in their motions for summary judgment, and so before resolving those motions the Court must decide whether Judge Petrie's testimony is properly before the Court. Defendants argue for exclusion on the basis that this case concerns purely a question of law on which expert testimony is inappropriate. [R. 93 at 1.] Even if Judge Petrie's testimony is relevant, Defendants argue it should be excluded because "[Judge Petrie] cannot reliably reach any universal conclusions about all Kentucky family court judges." *Id.* at 7.

7

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The seminal case evaluating expert testimony is *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  In that decision, the Supreme Court explained that a district court's gatekeeping responsibility is implicit in Rule 702, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.  Further, the Supreme Court listed several specific factors to help determine the reliability of expert testimony based on scientific knowledge. *See id.* at 590, n. 8.  These factors include whether a theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether there is a high known or potential error rate; whether there are certain operation standards that should have been or were followed; and whether the theory or technique is generally accepted within the scientific community. *Id.* at 592–94.  Later, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court determined that the gatekeeping obligation and factors established in *Daubert* apply with equal force to non-scientific experts.  However, those factors are not definitive and district courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152.

From Rule 702 and *Daubert*, the Sixth Circuit has distilled a two-part test for admitting expert testimony. First, is the expert qualified and the testimony reliable? And second, is the evidence relevant and helpful to the trier of fact? *See, e.g., United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997). Whether or not to admit expert testimony is a matter over which the district court ultimately enjoys broad discretion. *See, e.g., Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010).

Judge Petrie has been a judge in the 50th Judicial Circuit of Kentucky for the past twenty years. [R. 98-3.] He has served as both a district and circuit court judge. *Id.* In that time, Judge Petrie has presided over all manner of family law cases, including DNA proceedings. *Id.* Additionally, as Kentucky Judicial College faculty, Judge Petrie has "facilitated training and interfaced with other Judges in the Commonwealth of Kentucky regarding the handling of child DNA cases." *Id.* From the foregoing, it is plain that Judge Petrie possesses enough experience to speak to the practices of Kentucky courts in DNA proceedings. As a non-scientific expert, the fact that Judge Petrie has not independently studied the practices of every family law court in the Commonwealth is immaterial; it is not necessary that he collect "data". The factors listed in *Daubert* do not apply in all cases, and are meant to be helpful guidelines, not a "definitive checklist or test." *Kumho Tire*, 526 U.S. at 150–52 (quoting *Daubert*, 509 U.S. at 593).

Second, the Court finds Judge Petrie's deposition testimony is relevant and helpful to the trier of fact. Defendants argue that the parties' dispute turns on an interpretation of law, and therefore expert testimony is inappropriate. [R. 93 at 1, 3.] But while the Court agrees with Defendants that this is primarily a dispute of law, context helps. The Court has read Judge Petrie's deposition testimony and found it helpful in illustrating the framework in which these fought-over statutes exist, as well as their practical implications.

Importantly, the Court is the finder of fact in this case. The parties agree that this matter is likely to be resolved at the dispositive motion stage; if not, the matter will proceed to a bench trial. [R. 109; R. 100; R. 35.] Therefore, the risk that an impermissible legal conclusion might confuse or prejudice the jury is nonexistent. If at some point in his testimony Judge Petrie has drawn such a conclusion, the Court is confident in its ability to disregard it. Accordingly, Defendants' Motion to Exclude Opinion Testimony [R. 93] is DENIED.

**2**

Before the Court are cross-motions for summary judgment. [R. 79; R. 96.] Plaintiffs seek both declaratory and injunctive relief. Courts generally consider the following factors in determining whether it is appropriate to enter declaratory judgment:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). Here, the Court finds that a declaratory judgment is appropriate. A declaratory judgment would clarify the requirements of federal law in the context of foster care maintenance payments, which is the crux of the dispute between the parties. Such a judgment would not encroach upon the jurisdiction of state courts, because the program at issue is a federal program under Title IV-E of the Social Security Act. Finally, both parties agree that declaratory relief is appropriate. [R. 79; R. 96.]

"A plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, 'that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted,' and that it is in the

public's interest to issue the injunction." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2005) (quoting *eBay, Inc., et al., v. MercExchange, LLC*, 547 U.S. 388 (2006)).

Plaintiffs have likewise moved for entry of a preliminary injunction pursuant to Rule 65. Fed. R. Civ. P. 65(a). Subpart (a)(2) provides that "[b]efore or after beginning the hearing on a motion for preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2). The Court held a hearing on the preliminary injunction in September, 2019, however the Court has yet to decide the issue. [R. 109.] Turning now to the merits of the case and Plaintiffs' argument for a permanent injunction obviates the need for a preliminary injunction. Plaintiffs' Motion for Preliminary Injunction is DENIED AS MOOT.

**3**

At the heart of the dispute is whether a child's "placement and care are the responsibility of the State agency administering the State plan" for foster care maintenance payments when the DNA court places the child directly into the custody of a relative or fictive kin caregiver. This stands in contrast to a circumstance where the child is placed in the custody of the Cabinet. 42 U.S.C. § 672(B)(i). Defendants argue that in order to have "placement and care responsibility" over a child, the Cabinet must have custody of that child. [R. 96 at 2.] Plaintiffs disagree; they argue that the "custody" requirement alleged by Defendants "contravene[s] federal statutes and regulations." [R. 79 at 7.] Both parties cite to *D.O. v. Glisson*—which they interpret antithetically to one another—as dispositive of this issue. 847 F.3d 374 (6th Cir. 2017).

In *Glisson*, the Sixth Circuit considered whether plaintiff R.O., aunt and caregiver to D.O. and A.O., was entitled to foster care maintenance payments. *Id.* at 381. Like most of the plaintiffs in this case, A.O. and D.O. were removed from their home through a DNA proceeding

and placed directly into the temporary custody of a relative caregiver by court order, not by the

Cabinet. *Id.* at 382. In beginning its analysis, the *Glisson* court set out the following premise:

> Section 672(a) restricts the class of children entitled to benefits in two relevant
> ways. *First*, the child must be in the Cabinet's custody; once the child is adopted
> or placed in a permanent guardianship, the Act no longer requires maintenance
> payments. *Second*, the child must be placed in a licensed or approved "foster
> family home."

*Id.* at 381. The Court went on to state that "[b]oth parties agree that the Cabinet need only make

payments on behalf of children that are in its custody. Furthermore, there is no doubt that the

Cabinet obtained responsibility for the children when the family court removed them from their

mother's home." *Id.* Clearly, the court in Glisson started from the presumption that A.O. and

D.O. were, at least at one point, eligible for FCMP benefits. The issue in *Glisson*, as the Sixth

Circuit panel framed it, was whether they continued to be eligible, or "whether the family court

discharged the children from the Cabinet's care when it ordered the boys to live with the aunt

and closed the case." *Id.*

For this reason, the Court is unconvinced that *D.O. v. Glisson* is as important as either

party argues. Although in the neighborhood of on-point, it does not quite reach the destination at

hand. Neither party argued the question before the Court today. The central issue in *Glisson*

was whether A.O and D.O. achieved permanency under the law when the Fayette Family Court

"closed the DNA action of both boys by granting joint custody to R.O. and [the boys' mother]"

by writing the order on the docket sheet during a DNA proceeding, and not on an "AOC-DNA-9

Order-Permanent custody form as required by Rule 22." *Id.* at 382. Kentucky law required that

"[a]ny order of permanent custody entered pursuant to K.R.S 620.027 shall be on AOC-DNA-9,"

and so if the note was insufficient, then A.O and D.O had not achieved permanency and R.O.

might still be entitled to payments. On remand, the Sixth Circuit ordered the district court to

"determine whether the Cabinet maintains responsibility for the children's 'placement and care,'" because if not, "then the district court shall award foster care maintenance payments." *Id.* at 384 (citing Fam. Ct. R. P. Prac. 22(4).

The *Glisson* court apparently started from the premise that any child removed from their home through a DNA proceeding was in the custody of the Cabinet, and therefore R.O. need only establish that (1) A.O. and D.O. had not achieved permanency and (2) R.O.'s home qualified as a foster family home under § 672 to prevail. *Glisson* is not dispositive on the issue of "placement and care responsibility" because R.O.'s eligibility for FCMP benefits was never in question; it was her *continued* eligibility that was analyzed by the court. Thus, *Glisson* says a lot about what terminates eligibility, and little to nothing about what establishes eligibility in the first place.

The thrust of Plaintiffs' argument is that the *Glisson* court "did not intend to create a new condition on Title IV-E eligibility that lacks support in federal law," when it used the word "custody" in its opinion, and the Court agrees. [R. 79 at 25.] But that doesn't necessarily mean that the court was "us[ing] the term 'custody' as shorthand for placement and care responsibility," as the Plaintiffs urge this Court to find. *Id.* Ultimately, while still valid and binding precedent, it is for another case. The Court does not agree that *Glisson* is dispositive of the issue in this case specifically.

**a**

Without the guidance of *Glisson*, the Court turns to the issue of whether the Cabinet had placement and care responsibility over the plaintiff children. The Court finds that it did not. Plaintiffs cite the Child Welfare Policy Manual, which states that "[c]ustody of the child is not a requirement of Federal law or policy under Title IV-E and the State agency need not be given

custody." [R. 79-4; <u>ACF Child Welfare Policy Manual</u>, Chapter 8.3A.12, Q&A.1.] But the Child Welfare Policy Manual also states that "Placement and care responsibility allows the State agency to make placement decision about the child, such as where the child is placed and the type of placement most appropriate for the child." *Id.* at Q&A.4. In Kentucky, unless the Cabinet is given custody of the child, the Cabinet has no ability to discern or change the child's placement without court order. [*See* R. 98 at 13.] On the contrary, when a Kentucky court commits a child to the custody of the Cabinet, the Cabinet may unilaterally make placement decisions. *Id.* at 12; *see also* K.R.S. § 620.090(2).

Despite an inability to control placement, Plaintiffs argue the Cabinet accepts "placement and care responsibility" for all DNA children simply because it provides services "to all DNA children removed from their homes, irrespective of who the post-removal caregiver was . . . or how the child was put into the care of such a caregiver." [R. 79 at 17.] While such services are part of the equation when it comes to placement and care responsibility, the Cabinet provides all sorts of services to all sorts of children—including children who are not removed from their homes. *See* K.R.S. §§ 620.130, 620.140. The Court is not prepared to say the Cabinet has "placement and care" responsibility over the plaintiff children by virtue of providing services alone.

Further, "under accepted canons of statutory interpretation, we must interpret statutes as whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous." *Menuskin v. Williams*, 145 F.3d 177, 768 (6th Cir. 1998). If, as Plaintiffs argue, the Cabinet is vested with the placement and care of every child removed through DNA

proceeding, then § 672(a)(2)(B)[1]—which requires placement and care responsibility rest with either the state agency, public agency contracted with the State agency, or an Indian tribe with an approved Title IV-E plan—is superfluous.  If it were true that removed children were in the placement and care of the Cabinet regardless of who was given custody by the DNA court, then for Congress to include this subpart makes little sense.  For these reasons, the Court finds that absent a court order giving custody to the Cabinet, the Cabinet does not have placement and care responsibility over removed children within the meaning of § 672(a).  It follows that members of the Children's Class and Caregiver's Class are not entitled to FCMP benefits, because the children were not in the custody of the Cabinet prior to being placed in their relative caregiver's home.  Conversely, members of the Cabinet Custody Class are eligible for benefits, assuming all other requirements of § 672(a) are met.

**4**

Counts II and III of Plaintiffs' amended complaint allege that Plaintiffs are statutorily entitled to a hearing, and that Defendants have contravened their obligations under Title IV-E and violated Plaintiffs' procedural Due Process rights by refusing this statutory entitlement.  [R. 35 at ¶¶ 82–87, 90.]

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "No State shall deprive any person of life, liberty, or property, without due process

---

[1] Section 672(a)(2)(B) reads as follows:

(2) Removal and foster care placement requirements.  The removal and foster care placement of a child meet the requirements of this paragraph if —

. . .

(B) the child's placement and care are the responsibility of —

(i) the State agency administering the State plan approved under [42 U.S.C. § 671];

(ii) any other public agency with which the State agency administering or supervising the administration of the State plan has made an agreement which is in effect; or

(iii) an Indian tribe or tribal organization (as defined in [42 U.S.C. § 679c(a)]) or a tribal consortium that has a plan approved under [42 U.S.C. § 671] in accordance with [42 U.S.C. § 679c][.]

of law." U.S. Const. amend. XIV.   The procedural component of the Due Process Clause

protects rights created by state law and guarantees that no significant deprivation of life, liberty

or property will take place until notice has been provided and the individual has a meaningful

opportunity to be heard.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct.

1487, 84 L. Ed. 2d 494 (1985).  In *Kentucky Department of Corrections v. Thompson*, 490 U.S.

454, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989), the United States Supreme Court stated:

> We examine procedural due process questions in two steps: the first asks whether
> there exists a liberty or property interest which has been interfered with by the
> State, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S. Ct.
> 2701, 2706, 33 L.Ed.2d 548 (1972); the second examines whether the procedures
> attendant upon that deprivation were constitutionally sufficient, *Hewitt v. Helms*,
> 459 U.S. at 472, 103 S.Ct. at 871, 74 L. Ed. 2d 675.  The types of interests that
> constitute "liberty" and "property" for Fourteenth Amendment purposes are not
> unlimited; the interest must rise to more than "an abstract need or desire," *Board
> of Regents v. Roth*, 408 U.S. at 577, 92 S. Ct. at 2709, and must be based on more
> than "a unilateral hope," *Connecticut Board of Pardons v. Dumschat*, 452 U.S.
> 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981).  Rather, an individual
> claiming a protected interest must have a legitimate claim of entitlement to it.

*Thompson*, 490 U.S. at 460.

Plaintiffs point to Title IV-E itself as the source of their entitlement to a hearing.  Section

671(a)(12) provides for "an opportunity for a fair hearing before the State agency to any

individual whose claim for benefits . . . is denied or is not acted upon with reasonable

promptness."  Plaintiffs also point to 45 C.F.R. 205.10[2], which requires state plans administered

through the Social Security Act to provide a system for hearings and further requires the agency

to inform applicants or recipients of benefits in writing of their right to a hearing, the method of

obtaining that hearing, and any right to representation at the hearing.  45 C.F.R. 205.10(a)(1),

(3).  The Plaintiff caregivers allege they "were given no or improper notice of their potential

eligibility for FCMP benefits in spite of the fact that each Plaintiff child is clearly eligible."  [R.

---

[2] This regulation is made applicable by 45 C.F.R. 1355.30(p)(2).

79 at 35.]  As evidence of this, Plaintiffs point to the Cabinet's Relative and Fictive Kin Caregiver Agreement, which Plaintiffs contend inaccurately informs relative and fictive kin caregivers that they are not entitled to FCMP benefits, period.  *Id.*

For support, Plaintiffs cite *Timmy S. v. Stumbo* as holding that Plaintiffs are entitled to a state fair hearing regarding the Cabinet's denial of their benefits.  [R. 79 at 23.]  The plaintiffs in *Timmy S.* were licensed foster care parents who provided care for Timmy S.  *Timmy S. v. Stumbo*, 916 F.2d 312, 314 (6th Cir. 1990).  In that case, plaintiffs sought declaratory and injunctive relief from "the Department's failure to afford administrative hearings to persons contesting or appealing the Department's denial, reduction, termination or failure to provide state- and federally- secured services, benefits and entitlements."  *Id.*  After holding that the plaintiffs had a private right of action enforceable though §1983, the Sixth Circuit agreed with the district court's holding that "as the [plaintiffs] are 'any individual' under 42 U.S.C. § 671(a)(12), they can seek an injunction to force the Department to comply with the funding requirements of that statute."  *Id.* at 315.  Ultimately, the Sixth Circuit held that "[plaintiffs] were entitled to a fair hearing for the denial of tangible benefits, such as the Department's failure to compensate them for the care they provided Timmy from September 1979 to February 1980 as a result of the allegedly wrongful decertification."  *Id.* at 316.

Here, however, the Court has already held that the plaintiff children, with the exception of R.C., D.C., and C.C.-1, were not in the custody of the Cabinet, and therefore the Cabinet lacked placement and care responsibility over those children.  Thus, the plaintiffs plainly fail to meet one of the specific criteria for FCMP eligibility: "the child's placement and care are the responsibility of . . . the State agency administering the state plan."  42 U.S.C. § 672(a)(2)(B).  True, the Sixth Circuit rested in part on the language "any individual," in the statute finding that

the plaintiffs were entitled to a hearing.  But what of those who plainly don't meet eligibility requirements?  Certain requirements under § 672(a), such as AFDC eligibility or foster care licensure, are fact-intensive inquiries and a denial of benefits on either of these bases could be contested in a hearing.  That is not the case here.

Instead, the situation at hand is similar, though not identical, to *Benton v. Rhodes.* 586 F.2d 1 (6th Cir. 1978).  The plaintiffs in *Benton* were Medicaid recipients who contested the reduction of their optional benefits.  *Id.* at 1.  The Ohio agency responsible for Medicaid planned to curtail optional benefits due to lack of appropriated funds.  *Id.* at 3.  Although federal regulations required a hearing before a reduction or termination of benefits, the Sixth Circuit held that, "when a state decides to terminate optional benefits on the basis of lack of appropriated funds, or for any other reason, this is a matter of state law or policy."  *Id.* at 3.  Plaintiffs argue that *Benton* is irrelevant, because it "concerns state-created ***optional*** Medicaid benefits and not mandatory Title IV-E benefits[.]"  [R. 94 at 18.]  But the principle applies.

Plaintiffs object to the Cabinet's interpretation, and now, this Court's ruling, regarding Title IV-E benefits.  Broad-sweeping objections to Kentucky's implementation of its Title IV-E program, even if erroneous, are not likely to be remedied in individual hearings.  And although § 671(a)(12) grants a hearing to "any individual," the purpose of a hearing is to allow the decisionmaker to consider facts that might differ between cases.  The Court agrees with the Cabinet that children who are not placed into the custody of the Cabinet fail to meet the requirements of § 672(a)(2), as a matter of law.  If, nevertheless, they are entitled to a hearing on that point, then so would be a foster parent without a foster child in their care, or any other person plainly ineligible for the benefits which they seek.  Members of the Children's Class and Caregivers' Class have no property interest in the hearing created by § 672(a)(12); they are

18

ineligible for benefits, and not among those who congress intended to protect.  Other courts have reasoned similarly.  *Johnson v. New York State Office of Child & Family Servs.*, 2017 U.S. Dist. LEXIS 206976, *21 (N.D.N.Y. Dec. 18, 2017) ("Plaintiff . . . broadly asserts that foster parents and children have a property interest in foster care maintenance payments.  This is legally irrelevant; . . . L.R. was not a foster child when Plaintiff's benefits were terminated, and Plaintiff was not a foster parent."); *Maher v. White*, 1992 U.S. Dist. LEXIS 7537, *7 (E.D. Pa. June 4, 1992) (finding natural parents are not entitled to hearing on benefits under § 671(a)(12) because "natural parents, who have no claim to the benefits, have no right to notice when they are denied.").

Members of the Cabinet Custody Class are situated differently.  Placement and care responsibility over child-members of this class rests with the Defendants.  Accordingly, they are among the persons potentially eligible for FCMP benefits.  The class representatives of the Cabinet Custody Class argue that while they have received some benefits, they have not received the full amount to which they are entitled.  [R. 79 at 39, n. 35.]  This is precisely the type of individualized determination that an administrative hearing can address.  The Court finds that the Cabinet Custody Class members are entitled to a state fair hearing, pursuant to § 671(a)(12)[3].

**5**

---

[3] The Court is aware that there is a fourth class—the Notice and Hearing Class—whose members include "all children in the Commonwealth of Kentucky removed from their homes in a DNA proceeding and temporarily placed with relative or fictive kin caregivers, as well as all such relative or fictive kin caregivers, who, between June 16, 2014 and April 1, 2019 were not timely provided notice of their potential eligibility for FCMP benefits by the Cabinet or DCBS upon the children's placement with the relative or fictive kin caregiver, or for whom FCMP benefits eligibility was denied without timely and proper notice of their right to challenge and appeal such a denial in a fair evidentiary hearing with due process review[.]"  [R. 116 at 21.]  The Notice and Hearing Class consists of all members of the Children's Class, Caregivers' Class, and Cabinet Custody Class.  Therefore, while the Court has not addressed the rights of the Notice and Hearing Class as a whole, it has declared the rights of all of its members in issuing this Order with respect to the Chidren's, Caregivers' and Cabinet Custody classes.

Lastly, Count IV of Plaintiffs' Complaint alleges that Defendants' violated the Equal Protection Clause "by refusing to provide foster care maintenance payments to them, but providing such payments to other eligible foster children and foster care providers based on an arbitrary, unlawful, and unreasonable distinction[.]"  [R. 35 at ¶ 92.]  More specifically, Plaintiffs argue that Defendants refuse to issue FCMP benefits "for the sole reason that the Plaintiff children are related to, or have a fictive kin relationship with their respective caregivers."  [R. 79 at 19.]

In support, Plaintiffs again cite *Glisson*, which also addressed whether R.O.'s home qualified as a "foster family home" under § 672(a)(2)(C), ultimately concluding that it did: "because the Cabinet 'conducted a standard home evaluation and criminal background check on R.O.' prior to delivering the children to her care, she is an approved foster care provider." *Id.* at 384.  The plaintiffs in *Glisson* argued that, because R.O. was licensed as a foster care provider, the refusal to provide benefits must have been based on her status as D.O. and A.O.'s aunt.   The Sixth Circuit said "[t]o the extent the Cabinet's failure to make maintenance payments turns on the distinction between relative and non-relative foster care providers, it plainly violates federal law."  [R. 79 at 11; *Glisson*, 847 F.3d at 383.]

Here, however, the distinction is not made "between relative and non-relative foster care providers," but between children who were placed in the custody of the Cabinet and those who were not.  Plaintiffs argument is undermined by their own admission that members of the Cabinet Custody Class have received FCMP benefits, despite also being in relative or fictive kin care arrangements.  [R. 79 at 16, n. 19.]  Defendants have likewise tendered FCMP benefits to others who were placed into relative or fictive kin care by the Cabinet.  *Id.* at 39, n. 35.  The policy fairly distinguishes between children in the "placement and care" responsibility of the

Cabinet from those who were placed into the temporary custody of a relative or fictive kin by the court, as is required by § 672.  It does not discriminate against Plaintiffs' relationships, and therefore does not violate Equal Protection.  Accordingly, summary judgment is GRANTED for defendants as to Count IV, and Plaintiffs' motion is DENIED.

### III

In a perfect world there are no needy children.  In a less perfect world, all needy children removed from their homes and the relative and fictive kin caregivers that nurture them would receive financial assistance from state and federal government, regardless of how the children came to be placed in a relative's care.  But that is not this world.  State and federal law draws a distinction between children who are placed by the Cabinet in state foster care facilities, and those who are placed by a court into the temporary custody of a relative.  Only the former may benefit from Title IV-E in Kentucky.

Accordingly, it is hereby **ORDERED** as follows:

1.     Defendants' Motion to Dismiss **[R. 97]** is **DENIED**;

2.     Defendants' *Daubert* Motion to Exclude Opinion Testimony **[R. 93]** is **DENIED**;

3.     Plaintiffs' Motion for Preliminary Injunction **[R. 79]** is **DENIED AS MOOT**;

4.     As to Count I of the Amended Complaint, Defendants' Motion for Summary Judgment **[R. 96]** is **GRANTED** with respect to the Children's Class and the Caregivers' Class, but **DENIED** with respect to the Cabinet Custody Class, and Plaintiffs' Motion for Summary Judgment **[R. 79]** is **DENIED** with respect to the Children's Class and the Caregivers' Class, but **GRANTED** with respect to the Cabinet Custody Class;

5.     As to Counts II and III of the Amended Complaint, Defendants' Motion for Summary Judgment **[R. 96]** is **GRANTED** with respect to the Children's Class and the

Caregivers' Class, but **DENIED** with respect to the Cabinet Custody Class, and Plaintiffs' Motion for Summary Judgment **[R. 79]** is **DENIED** with respect to the Children's Class and the Caregivers' Class, but **GRANTED** with respect to the Cabinet Custody Class;

      6.     As to Count IV of the Amended Complaint, Defendants' Motion for Summary Judgment **[R. 96]** is **GRANTED** and Plaintiffs' Motion for Summary Judgment **[R. 79]** is **DENIED**; and

      7.     Judgment shall issue promptly.

This the 28th day of May, 2020.

Gregory F. Van Tatenhove
United States District Judge